IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARGEELING LEONARD,                  :    CIVIL ACTION
                                    :    NO. 17-2023
        Plaintiff,             :
                                      :
    v.                             :
                                      :
TJUH SYSTEM, THOMAS           :
JEFFERSON UNIVERSITY         :
HOSPITALS, INC., and         :
TJU HOSPITALS, INC.,         :
                                      :
        Defendants.           :

**M E M O R A N D U M**

EDUARDO C. ROBRENO, J.                       August 13, 2019

      Plaintiff Dargeeling Leonard brings this case against her former employers, TJUH System, Thomas Jefferson University Hospitals, Inc., and TJU Hospitals, Inc. (collectively, "TJUH"), alleging she was discriminated against because of her race and age, retaliated against for complaining about the discrimination, and subjected to a hostile work environment. TJUH has moved for summary judgment on all claims.  Leonard has failed either to make out a prima facie case or to show pretext. The Court will grant TJUH's motion for summary judgment as to all counts.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Leonard was employed by TJUH in the Sleep Center as a polysomnography technician for approximately eleven years before she was terminated on April 11, 2016.  During that time, Leonard was formally disciplined numerous times, including once for failing to record certain data properly, which resulted in a safety violation (incident on October 24, 2015, disciplinary action on January 28, 2016), and once for failing to appear for a scheduled shift (incident on December 29, 2015, action on January 7, 2016).  Leonard was placed on a first Performance Improvement Plan ("PIP") in February 2014, which she successfully completed.  An annual performance evaluation ending in June 2015 noted a decline in her work quality, including incorrect orders and inaccurate or missing documentation. Leonard was placed on a second PIP in August 2015.  TJUH claims that it terminated Leonard for failing to complete the second PIP successfully.

Leonard alleges that TJUH discriminated against her, retaliated against her, and subjected her to a hostile work environment.  In particular, Leonard alleges that other younger, white employees were not held to the same performance standards, as demonstrated by a March 2015 statistical analysis of the

---

[1]    The Court views the facts in the light most favorable to Leonard, the non-movant.

errors made by Sleep Center workers.  Leonard also alleges that a comment made by her supervisor, Robert Tavella, about people who are 55 years old shows that she was discriminated against on the basis of her age.  She alleges that she was retaliated against for reporting instances of discrimination, as shown by her termination less than a year later.  Finally, she alleges a hostile work environment based on the same conduct that supports her other claims, and other incidents involving her co-workers, including sabotage and being isolated by them.

Leonard timely filed charges of race and age discrimination and retaliation against TJUH with the Equal Employment Opportunity Commission ("EEOC") and The Pennsylvania Human Relations Commission.  The EEOC issued Leonard a right-to-sue letter on February 3, 2017.  Leonard timely filed her complaint in this matter, bringing claims under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the Age Discrimination in Employment Act of 1967 ("ADEA") (29 U.S.C. § 621 et seq.), and the Pennsylvania Human Relations Act (43 Pa. Cons. Stat. § 951 et seq.).  With leave of the Court, Leonard filed a Second Amended Complaint, which added the claim of hostile work environment.  Pending before the Court is TJUH's motion for summary judgment on all claims.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment will be granted where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" if it affects the outcome of a case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if a reasonable factfinder looking at the evidence could decide in favor of the nonmoving party.  Id.  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine dispute of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson, 477 U.S. at 247-48).

The Court analyzes the record in the light most favorable to the nonmoving party.  Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010).  The moving party carries the initial burden of demonstrating no genuine issue of material fact.  Anderson, 477 U.S. at 250.  If this requirement is met, the burden shifts to the nonmoving party who must "set forth specific facts showing that there is a genuine issue" and that the case should proceed to trial.  Id.

**B.    Title VII and ADEA Claims at Summary Judgment**

A plaintiff who lacks direct evidence of race or age discrimination may prevail under the three-part burden-shifting framework established by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973). <u>See</u> <u>Burton v. Teleflex Inc.</u>, 707 F.3d 417, 425-27 (3d Cir. 2013). The burden-shifting framework concerns burdens of production. <u>Id.</u> The burden of persuasion, however, remains with the plaintiff at all times. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).

First, a plaintiff must establish a prima facie case of discrimination or retaliation. <u>Burton</u>, 707 F.3d at 426. "To establish a prima facie case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.'" <u>Id.</u> (alteration in original) (quoting <u>Duffy v. Paper Magic Grp.</u>, 265 F.3d 163, 167 (3d Cir. 2001)). "If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, she has not met her initial burden, and summary judgment is properly granted for the defendant." <u>Id.</u> (citing <u>Geraci v. Moody-Tottrup, Int'l, Inc.</u>, 82 F.3d 578, 580 (3d Cir. 1996)). A plaintiff "has established a prima facie case when sufficient evidence is offered such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on

impermissible reasons." EEOC v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to proffer a legitimate non-discriminatory reason for the adverse employment action. Burton, 707 F.3d at 426. "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." Id. (quoting Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)).

If the defendant provides a legitimate non-discriminatory reason, the burden of production then shifts back to the plaintiff "to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." Id. (citing Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir. 1994)). A plaintiff can show pretext by adducing "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 427 (citing Fuentes, 32 F.3d at 764).

To challenge an employer's proffered reason and allow a factfinder to disbelieve the defendant, the plaintiff must produce evidence that shows "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"  Id. (quoting Fuentes, 32 F.3d at 765).

To allow a factfinder to believe an invidious discriminatory reason, the plaintiff must show that "(1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated . . . individuals more favorably."  Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 645 (3d Cir. 2015).

If the plaintiff fails to make a showing of pretext, summary judgment is awarded to the defendant.  Burton, 707 F.3d at 426-27 (citing Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008)).

## III. DISCUSSION

### A.   Time Bar on Actionable Incidents

As a threshold matter, only adverse employment actions that are timely under Title VII, ADEA, and the PHRA may be considered.  In states where an agency may grant relief for

7

federally prohibited employment discrimination, such as
Pennsylvania, a plaintiff must file claims with the EEOC within
300 days of the alleged unlawful employment practice.  42 U.S.C.
§ 2000e-5(e)(1); Watson v. Eastman Kodak Co., 235 F.3d 851, 854
(3d Cir. 2000); see also Koller v. Abington Mem'l Hosp., 728 F.
App'x 136, 138 n.1 (3d Cir. 2018) (non-precedential).

 "Discrete" discriminatory acts "must be raised within
the applicable limitations period or they will not support a
lawsuit."  O'Connor v. City of Newark, 440 F.3d 125, 127 (3d
Cir. 2006).  Thus, Leonard is barred from challenging incidents
that happened before June 23, 2015 (300 days prior to Leonard's
EEOC filing on April 18, 2016).

 As applied to Leonard's claims, she may only challenge
the following incidents:  the second PIP (August 2015), the two
disciplinary actions in January 2016, and her termination in
April 2016.

 **B.** **Race Discrimination**

  1. <u>Plaintiff has failed to establish a prima facie
case</u>

A plaintiff can establish a prima facie case of race
discrimination under Title VII by showing:  (1) she is a member
of a protected class; (2) she was qualified for the position in
question; (3) she suffered an adverse employment action; and (4)
that adverse employment action gives rise to an inference of

unlawful discrimination.  Jones v. Sch. Dist. of Phila., 198

F.3d 403, 410-11 (3d Cir. 1999).  Only the fourth element is

disputed by the parties.

Leonard has failed to establish that any of the

adverse employment actions give rise to an inference of unlawful

discrimination.  Each adverse employment action was prompted by

Leonard's conduct, be it failing to enter data correctly or

timely, failing to attend work for a scheduled shift, or failing

to pass a PIP.

Leonard argues that similarly situated employees

outside of the protected class were treated more favorably.  A

plaintiff and another employee are similarly situated if they

"dealt with the same supervisor, were subject to the same

standards, and had engaged in similar conduct without such

differentiating or mitigating circumstances as would distinguish

their conduct or the employer's treatment of them."  Radue v.

Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)

(citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.

1992)) (overruled on other grounds by Ortiz v. Werner Enters.,

Inc., 834 F.3d 760 (7th Cir. 2016)); see also Johnson v. Kroger

Co., 319 F.3d 858, 867 (6th Cir. 2003) ("In the context of

personnel actions, the relevant factors for determining whether

employees are similarly situated often include the employees'

supervisors, the standards that the employees had to meet, and

the employees' conduct." (citing Ercegovich v. Goodyear Tire &
Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998))).  If similarly
situated employees are treated differently, a reasonable
factfinder can determine that an employer based his decision on
an impermissible consideration such as race.  See Tice v. Ctr.
Area Transp. Auth., 247 F.3d 506, 518 (3d Cir. 2001); Pivirotto
v. Innovative Sys., Inc., 191 F.3d 344, 353-54 (3d Cir. 1999).

　　　　Leonard has failed to identify a similarly situated
employee of a different race who was treated more favorably in
any comparable disciplinary action.  Leonard argues that she was
given unfair performance targets and held to a higher standard,
as shown by being placed on the August 2015 PIP.  Leonard cites
only a March 2015 statistical analysis that was prepared by her
supervisor, Robert Tavella.  However, that analysis, which
consists of a pie chart showing a snapshot of the cumulative
number of errors over several weeks, cannot support Leonard's
claims.  The pie chart contains no details as to which members
of the team made the errors.  Accordingly, the errors made
across any or all of the listed categories could have been by
one employee, a few employees, or all of the employees.  As
such, the pie chart cannot by itself show that another employee
was more favorably treated.  Moreover, the pie chart was shown
at a meeting in March 2015.  Leonard cites no record evidence

that other employees were making errors at a rate comparable to
her by the time Leonard was placed on the August 2015 PIP.

Leonard has not identified record evidence that raises
a genuine issue of fact that the standard set in the August 2015
PIP was not "more representative" of the errors Tavella
encountered "during the normal course of business operations,"
or of the work given back to Tavella for correction by his
supervisors.

Finally, Leonard has also failed to show that other
employees who made comparable infractions were treated more
favorably.

Under the circumstances of this case, the Court
concludes that Leonard has not met the prima facie burden, thus
Leonard's claim of race discrimination fails.

2.   <u>Plaintiff has failed to show pretext</u>

Even assuming Leonard had made out a prima facie case,
Plaintiff's race discrimination claim fails for lack of pretext.
TJUH has stated legitimate nondiscriminatory reasons for placing
Leonard on the August 2015 PIP (continuing data entry errors),
disciplining Leonard (serious data entry errors; unauthorized
absence), and terminating Leonard (failure to pass the PIP).

Leonard did not respond to TJUH's arguments about
pretext in support TJUH's motion for summary judgment.  In any
event, Leonard's only evidence appears to be based on the pie

chart.  But, as described above, the pie chart does not provide specific information that would allow a reasonable factfinder to either disbelieve the TJUH's articulated reasons or believe that Leonard's race was more likely than not a motivating cause.

Leonard has not shown weaknesses or inconsistencies that would allow a reasonable factfinder to find TJUH's proffered reasons "unworthy of credence."  On the contrary, the record shows that Leonard continued to make data errors and failed to make sustained improvements according to the PIP. Moreover, Leonard was disciplined for an incident in October 2015 where she made errors in recording medication and vitals, amounting to a safety violation.  Leonard had no explanation for why this incident happened.  The record shows, and Leonard does not dispute, that she could have been terminated for this conduct.

Similarly, Leonard has not shown that TJUH previously discriminated against her or others within her protected class or treated similarly situated workers outside her protected class more favorably.

Leonard's race discrimination claim fails because, under these circumstances, a reasonable factfinder could not find that Leonard was adversely treated because of her race.

**C.   Age Discrimination**

    1.   <u>Plaintiff has failed to show direct evidence of age discrimination</u>

If an ADEA plaintiff presents "direct evidence" that her age was "a substantial factor in the decision to fire [her], the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered [her] age." <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 338 (3d Cir. 2002).  "'Direct evidence' means evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on [the plaintiff's age] in reaching their decision" to discipline or terminate the plaintiff.  <u>Id.</u> (alteration in original) (quotation marks omitted) (quoting <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 976 (3d Cir. 1998)).

    Leonard has not adduced evidence that TJUH placed any reliance on Leonard's age when disciplining or terminating her.

    Leonard argues that a comment in late 2014 made by her supervisor, Robert Tavella, is direct evidence.  Assuming Leonard's version of events to be accurate, at a staff meeting, Tavella said that because Tavella's father was now 55 years old, he was considered old.  When another employee pointed out that Leonard was also 55 years old, Tavella responded, "Yeah, old."

Tavella's comment cannot be relied upon to prevail on her age discrimination claim. <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). The comment had nothing to do with Leonard's job or prospects for continued employment at TJUH, and no reasonable factfinder could find otherwise. <u>Fakete</u>, 308 F.3d at 339-40. The comment is at most merely a stray remark, part of random office banter, or an innocuous conversational jab. <u>Id.</u>

Leonard also alleges that on March 27, 2015, Tavella told Leonard that she was not "keeping up" and that he wished she "would find someplace else to work." Leonard tries to link these comments to the alleged "yeah, old" comment. These comments, however, do not have anything to do with age, and it would be too much of a stretch to find otherwise. Leonard cannot crowbar these comments into an age discrimination claim.

### 2.    Plaintiff has failed to show pretext

A plaintiff's prima facie claim of age discrimination requires showing that:  (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by

another employee who was sufficiently younger so as to support an inference of a discriminatory motive. <u>Burton</u>, 707 F.3d at 426. The plaintiff must prove by a preponderance of the evidence that age was the "but-for" cause of the adverse employment action. <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 177-78 (2009). Once again, only the fourth element of the prima facie analysis is disputed by the parties.

Even if the Court assumes Leonard has made a prima facie case, her age discrimination claim fails for similar reasons as her race discrimination claim. The comments made by Tavella do not show that he was an ageist supervisor. Leonard has failed to show that TJUH disciplined and terminated Leonard because of her age.

**D. Retaliation**

1. <u>Plaintiff has failed to establish a prima facie case</u>

In the absence of direct evidence, a claim for retaliation is analyzed according to the familiar burden-shifting framework. <u>Marra v. Phila. Hous. Auth.</u>, 497 F.3d 286, 300-01 (3d Cir. 2007). To establish a prima facie case of retaliation a plaintiff must establish that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. <u>Daniels</u>

v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015)

(citing Fogleman v. Mercy Hosp. Inc., 283 F.3d 561, 567–68

(3d Cir. 2002)).

Protected activity includes a plaintiff's good faith

protest at what she believes to be a "discriminatory practice."

Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir.

1996).

To prove the third element, a causal connection

between the protected activity and the adverse employment

action, a plaintiff must "must establish that his or her

protected activity was a but-for cause of the alleged adverse

action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar,

570 U.S. 338, 362 (2013). A plaintiff must provide evidence

that the retaliation would not have occurred in the "absence of

the alleged wrongful action or actions of the employer." Id. at

360. To determine whether there was a causal link between the

protected activity and an adverse employment action, the

evidence "must be considered with a careful eye to the specific

facts and circumstances encountered." Farrell v. Planters

Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000).

Leonard alleges that she engaged in a protected

activity on May 4, 2015, by meeting with Zene Colt in Human

Resources to complain about Tavella's remarks about keeping up

and finding somewhere else to work. Leonard claims to have

asked Colt "[I]s this religious?  Is this racial?  Is it age?  What's the problem here?"

TJUH disputes that Leonard said she was being discriminated against.  Nevertheless, for the purposes of its motion for summary judgment, TJUH argued that even if Leonard did engage in protected activity, she has failed to prove a causal connection between the adverse employment actions.  TJUH argues her claim fails due to the lack of temporal proximity and lack of a "pattern of antagonism."

Leonard blithely refers to the "same facts" in support of her retaliation claim but only states that the termination was the retaliatory conduct.  Leonard was terminated on April 11, 2016, eleven months after the alleged protected activity took place.  Even assuming the August PIP was retaliatory, the best Leonard could argue (but did not) was that three months had elapsed.  Leonard appears to concede that the gap in time is too great as to be suggestive of causal connection alone.[2]

---

[2]     In Clark County School District v. Breeden, 532 U.S. 268, 273 (2001), the Supreme Court explained that temporal proximity must be "very close" in order for a plaintiff to establish a prima facie case based on "mere temporal proximity" alone.  The Supreme Court explained that a gap of three or four months, by itself, was insufficient.  Id. at 273-74 (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four-month period insufficient)).  Of course, Leonard's argument weakens as the gap increases, so the two disciplinary actions in January 2016 and her termination in April 2016 cannot, by themselves, meet the causal connection requirement.

Leonard argues that other conduct during the intervening period shows the causal connection.  However, as with Leonard's claims for race and age discrimination, the record fails to support a prima facie case based on a "pattern of antagonism."

As evidence of retaliatory intent, Leonard points to an email between Zene Colt and Tavella regarding the investigation into the data entry errors Leonard made in October 2015.  Notwithstanding Leonard's characterization of the email, Colt wrote that the matter was "a serious concern" that "could have been a termination if not for the delay in the audit report coming back."  Colt then stated that "[t]his could serve as an addendum to the PIP and ultimately could help to support termination if Dee's performance continues to be below standards."  Leonard argues that this email demonstrates animus towards her and that TJUH was focused on terminating her.  However, no reasonable factfinder could interpret the email in context as evidence of retaliation.  The investigation was into serious data entry errors that concerned safety, which could have resulted in termination.  Leonard's performance prompted the investigation, and Leonard does not argue that the findings were incorrect.  Moreover, Leonard was not terminated for this incident but for failing to pass the PIP.  Leonard's performance fell below an appropriate standard, and she failed to improve.

2. <u>Plaintiff has failed to show pretext</u>

Even assuming Leonard had made out a prima facie case,
Plaintiff's retaliation claim fails for lack of pretext.  As
with the race and age discrimination claims, TJUH has stated
legitimate nondiscriminatory reasons for placing Leonard on the
August 2015 PIP, disciplining Leonard, and terminating Leonard.
TJUH argued in a fairly conclusory fashion that Leonard had no
evidence to support pretext.  Even with such a pithy argument,
Leonard did not respond to TJUH's arguments about pretext.

As with the race and age discrimination claims
discussed above, Leonard has failed to establish that TJUH
disciplined and terminated her in retaliation for protected
conduct.  Therefore, Leonard's retaliation claim fails.

**E.  Hostile Work Environment**

1.  <u>Leonard's hostile work environment claim is
untimely</u>

Before filing a lawsuit alleging discrimination,
retaliation, or hostile work environment, a plaintiff must
exhaust her administrative remedies by filing a timely
discrimination charge with the EEOC.  42 U.S.C. §§ 2000e-5(b),
(e)(1), (f)(1); <u>Barzanty v. Verizon PA, Inc.</u>, 361 F. App'x 411,
413-14 (3d Cir. 2010) (non-precedential).  After the EEOC has
investigated the charge, the EEOC issues a right-to-sue letter
that allows the plaintiff to initiate a private action.
<u>Barzanty</u>, 361 F. App'x at 413 (citing <u>Burgh v. Borough Council</u>,

251 F.3d 465, 470 (3d Cir. 2001)).  "The ensuing suit is limited to claims that are within the scope of the initial administrative charge."  Id. at 413-14 (citing Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996)).

"[T]he scope of the original charge should be liberally construed" because a non-counseled individual who drafts the charges is often "not well vested in the art of legal description."  EEOC v. Kronos Inc., 620 F.3d 287, 300 (3d Cir. 2010) (quoting Hicks v. ABT Assocs., Inc., 572 F.2d 960, 965 (3d Cir. 1978)).

"Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'"  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) (quoting O'Connor, 440 F.3d at 127).  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice and cannot be said to occur on any particular day."  Id. (quotation marks omitted) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-17 (2002)).  "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same

unlawful employment practice and that at least one act falls within the applicable limitations period." Id. at 165–66.

When a plaintiff has not checked the "continuing violation" box on the EEOC form, she may still be able to bring a hostile work environment claim if, for example, she alleged charges using words and phrases that are analogous to a claim of "hostile work environment," such as "abusive atmosphere." Barzanty, 361 F. App'x at 414.

Here, Leonard failed to check the appropriate box when filing her EEOC charge, but that fact does not necessarily prevent her hostile work environment claim from proceeding here. See id. Instead, the Court must consider whether Leonard's allegations were sufficient to provide notice to TJUH of a hostile work environment claim. Id.

Leonard did not use any words that are analogous to a hostile work environment. Leonard alleged four specific incidents in support of the charges of race and age discrimination and retaliation: (1) in March 2015, Tavella called her old and told her she was not keeping up; (2) in August 2015, a colleague said that "some people just don't fit" in response to Leonard requesting to take classes; (3) in December 2015, Tavella informed younger, white employees, but not her, about changes to the scheduled shift; and (4) in April 2016, she was terminated. Leonard also alleged that "Human

21

Resources never investigated any complaints [she] made or corrected any issues that occurred between [her] and [her] co-workers, however, any complaints about [her] resulted in an investigation." The incidents that have specificity are isolated, different in nature, and not part of a discernable pattern. The other allegation lacks any detail--it is vague and unclear as to conduct, timing, and frequency (if any) of the investigations or lack of investigations. Accordingly, this claim fails because Leonard did not exhaust her administrative remedies.

      2.  <u>Plaintiff has failed to establish a prima facie case</u>

      Even if the Court were to find that Leonard's EEOC charge adequately alleged a continuing violation to support a hostile work environment claim, she fails to make a prima facie case.

      To make out a prima facie case of hostile work environment, and survive summary judgment, a plaintiff must establish that: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person in like circumstances; and (5) there is a basis for holding the employer

vicariously liable. Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009); Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 278-79 (3d Cir. 2001) ("[I]f a plaintiff presents sufficient evidence to give rise to an inference of discrimination by offering proof that her workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and the conduct is based on one of the categories protected under Title VII, a hostile work environment claim will survive summary judgment." (internal quotation marks and citation omitted)); see also Morgan, 536 U.S. at 116 (quoting Harris v. Forklift Sys., 510 U.S. 17, 21 (1993)).

The totality of the circumstances must be considered to determine whether a work environment is hostile, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Morgan, 536 U.S. at 116 (quoting Harris, 510 U.S. at 23). Further, "no single factor is required." Harris, 510 U.S. at 23.

Under a continuing violation doctrine, acts that occurred before the statutory period can be considered so long

as at least one act falls within the statute of limitations. Mandel, 706 F.3d at 167. Here, the scope is limited to the time period from late 2014 to April 2016. Leonard refers to difficulty with her co-workers "in or around 2010 and 2011" and then conduct beginning with the late 2014 "yeah, old" comment.[3] The three-year gap between these events precludes consideration of 2010/2011 conduct because it could not be found to be continuous. See, e.g., Selvato v. SEPTA, 658 F. App'x 52, 55 (3d Cir. 2016) (non-precedential) ("Given the lack of evidence of harassing conduct between 2009 and August 2012, we conclude that the District Court correctly ruled that this gap breaks the continuity necessary to establish a continuous pattern of unlawful action.").

The conduct at issue is limited to: Tavella's "yeah, old comment" in late 2014; Tavella telling Leonard that she was not keeping up with the work in March 2015; being placed on a PIP in 2015; a colleague's allegation that Leonard falsified patient data in October 2015; Leonard's claim she was not informed about changes to the shift in December 2015; disciplinary action for not showing up to work in December 2015; two colleagues allegedly isolating Leonard in late 2015; one or

_____

[3]     Leonard's EEOC charge concerned conduct between late 2014 (the "yeah, old" comment, seemingly misstated to have been made in March 2015) and April 2016 (termination), while Leonard's Second Amended Complaint referred only to events in 2015 and onwards.

24

more coworkers allegedly sabotaging her work at some unspecified time or times in 2015; and being terminated for not passing the PIP in 2016.

As to the first part of the prima facie case analysis, Leonard has failed to show that she suffered intentional discrimination because of her membership in a protected class. "Discourtesy or rudeness should not be confused with . . . harassment" based on race or age. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). When looking at the totality of the circumstances, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. at 788.

Leonard fails to show that any of the conduct she challenges was discriminatory. At most, the events are "discourtesy or rudeness" and only "isolated incidents." The allegation of sabotage is serious, but Leonard only bases the allegation on suspicions--she merely alleges that "it could be true" that one or more of her colleagues sabotaged her work. To the extent Leonard reported her concerns, she was unable to substantiate anything. Leonard's claim for hostile work environment fails because she cannot make out the first element of a prima facie case.

Leonard has also failed to demonstrate the second element of a prima facie case:  the discrimination was severe or pervasive.  This is an objective standard based on "an environment that a reasonable person would find hostile or abusive."  Harris, 510 U.S. at 21.  For instance, in Tourtellotte v. Eli Lilly & Co., plaintiffs alleged that a manager had commented that "he had not met an African American individual until he went to college and that he majored in home economics because he wanted to be around women," and remarked about "all the female Barbie dolls that are now in the pharmaceutical industry." 636 F. App'x 831, 835 (3d Cir. 2016) (non-precedential).  The Third Circuit affirmed the district court's ruling that these were not so severe or pervasive as to change the terms of the plaintiffs' employment.  Id. at 847-48.

Here, Leonard has alleged comments and acts by her supervisor and coworkers which were infrequent.  Each instance of conduct could, at most, be considered either offensive or indicative of personal tensions, but none were physically threatening or humiliating.  The Court must consider the totality of the circumstances and not just individual incidents, but even considering this infrequent conduct on aggregate does not show a pattern that is either severe or pervasive.  Indeed, Leonard was disciplined for failing to meet standards and attend work, which she has not shown were improper disciplinary

actions.  Taking those out of the matrix further diminishes the totality of the circumstances.  As alleged, the workplace situation would not unreasonably interfere with an employee's workplace performance.  Under the totality of these circumstances, the Court concludes that Leonard has not met the second part of the prima facie case by showing severity or pervasiveness.  Leonard's claim for hostile work environment fails because she cannot make out the second element of a prima facie case.

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant TJUH's motion for summary judgment.

An appropriate order follows.